Filed 3/5/25  Syre v. Douglas CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| KIMBERLY THERESE SYRE, | |
| Plaintiff and Appellant, | E081937 |
| v. | (Super.Ct.No. ICSICVCV202268113) |
| MARK DOUGLAS, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Inyo County.  Stephen M. Place, Judge. Affirmed.

Law Offices of Brian Lamb, and Brian Lamb for Plaintiff and Appellant.

California Indian Legal Services, Rachel Leiterman and Michael Godbe for Defendant and Respondent.

### INTRODUCTION

Kimberly Therese Syre appeals from an order granting a preliminary injunction acknowledging Syre's one-half interest in real property and prohibiting Syre from

1

disposing of personal property on the premises. The litigation centers on who became the successor in interest in real property held in trust by the late Charlotte Willett, Mark Douglas's mother and Syre's aunt, where Willett first transferred, in her individual capacity, one-half of her interest in her real property to Syre, and then transferred her remaining one-half interest to Douglas.

When Willett died, Syre locked Douglas out of the house, excluded him from the property, and began selling and discarding personal property located on the premises, including property belonging to Douglas. Syre filed an action to quiet title, and Douglas cross-complained for quiet title, conversion, trespass to chattels, and declaratory relief. Douglas filed a motion for preliminary injunction to gain access to the property and to prohibit Syre from disposing of Douglas's personal property, which was granted. However, when it was later discovered that Syre had been occupying the property and was renting out trailers on the property to third parties, thereby preventing Douglas from taking possession of the real property, as contemplated by the court, the court ordered that Syre could retain possession pending resolution of the case on the merits to maintain the status quo but ordered Syre to compensate Douglas for her exclusive use of the real property. Syre appeals.

On appeal, Syre argues the court erred by (1) awarding payments of money to Douglas for her continued possession of the real estate from which he had been physically excluded but to which he claimed a property right; and (2) granting the

2

preliminary injunction without finding that Douglas had shown a likelihood of prevailing on the merits.  We affirm.

## BACKGROUND

Syre is the niece of Willett, who was the owner of real property in the city of Bishop, Inyo County, California, at the time of her death. Douglas is Willett's son, who is homeless and lacks a source of income.  In June 2008, Willett established a living trust, "'Charlotte A. Willett Trust dated June 14, 2008,'" (Trust) into which Willett transferred the real property.  At the time, Willett was not in communication with Douglas; Willett wanted to transfer her real and personal property to Douglas but wanted him to be clean of drugs and alcohol first.

Until 2013, Willett had rented out her property and resided in a mobile home.  The renters had mistreated Willett's property, requiring extensive repairs and work.  At Syre's suggestion, Willett sold the mobile home and resumed residence in her property.  Syre offered to help Willett with the cost of repairs in return for a half-interest in Willett's property.  Willett executed a grant deed transferring the real property from herself to both Willett and Syre as joint tenants; the deed was recorded.  Syre was unaware that the property was held in Trust and assumed Willett forgot to mention that fact in the grant deed.  The intent was that Willett would continue to reside on the property for the rest of Willett's life. In 2013, Willett's Trust was amended to name Syre as successor trustee, with instructions to distribute 50 percent of the Trust to Douglas.

3

In return for the interest in the property, Syre was to pay $100,000 to Willett, with $30,000 to be deposited into Willett's checking account and $70,000 into a joint savings account, under the names of Willett and Syre, for which Willett was to have a bank card to access the funds. Syre also was responsible for paying the property taxes and homeowners' insurance. However, the savings account did not have Willett's name on the account and the bank card provided to Willett had only Syre's name on it preventing Willett from receiving any funds deposited into the savings account, and Willett received a statement from the tax collector indicating the property taxes had not been paid.

In late 2019, Willett was still unable to access the money in the accounts, and Syre stopped responding to Willett's phone calls and text messages, causing the relationship to sour. When Syre did answer one call, Syre was loud, used abusive language, and threatened to charge Willett rent or evict her from the property. Willett, upset by Syre's abusive treatment, called her cousin, Pauline Adams, and her close friend Margery Hammer, informing them of these developments. Willett decided to remove Syre from Willett's Trust, and to seek a way to change the deed on her property to remove Syre's name.

In 2020, Willett fell, sustaining fractures to her leg and foot. Willett expressed to Adams her disappointment that Syre never attempted to contact Willett regarding her rehabilitation and told Adams that she felt that Syre was just waiting for Willett to die to get Willett's property. That same year, Willett expressed the intent to change her Trust and asked Adams to be the trustee.

Willett also expressed to Adams that she wished all her property to go to Douglas, especially her personal property. Willett was aware she could not transfer her interest in the real property to Douglas without Syre's knowledge. In 2021, Willett started the process of amending her Trust in favor of Douglas, even before she reunited with him. Willett named Adams as successor trustee, removing Syre's name. Willett's estate attorney, Linda Hess, advised Willett that she could break the joint tenancy by transferring her remaining one-half interest in the real property by way of a grant deed, and made other modifications to effectuate Willett's intentions. Douglas was unaware of the changes being made in his favor.

Early in 2021, Willett, who felt betrayed by Syre and desired to provide for Douglas, modified her Trust to transfer all her personal property and her remaining interest in the real property to Douglas, removing Syre's name from her Trust. The modified Trust instrument expressly provided that the trustee should transfer all of Willett's interest in the property, as well as all Willett's personal property, to Douglas. In the Spring of 2021, Douglas contacted Willett to inform her that he was clean and sober. Willett also executed a grant deed transferring her interest in the property to Douglas, although this deed omitted reference to the Trust. The grant deed was recorded on May 11, 2021. This deed also indicated that Willett was conveying the property as an individual, rather than trustee.

Willett and Douglas maintained a strong relationship until Willett's death. Willett was diagnosed with terminal lung cancer in May 2021 and died in June. Shortly before

her death, Willett directed Hess to modify the Trust again, instructing Hess to transfer $10,000 to Douglas, but Willett died before being able to execute the document.

Following Willett's death, and while Douglas was away, Syre entered the property and changed all the locks. When Douglas attempted to gain entry to the property upon his return, he was told he was not permitted to do so, and that Syre had threatened to have Douglas arrested if he returned. Later, Douglas learned that Syre had been selling many personal property possessions—some of which were Douglas's own possessions—to third parties, and that Syre considered a trailer that was located on the property to be hers. Among the items to which Douglas has been denied access were his art supplies, which has prevented him from pursuing his livelihood of selling his artwork.

On July 6, 2022, Syre filed a complaint for quiet title against Douglas and Adams as the successor trustee. On August 8, Douglas answered the complaint, and filed a cross-complaint for (1) quiet title, (2) conversion, (3) trespass to chattels, and (4) declaratory relief. Douglas also sought injunctive relief to enjoin Syre from preventing Douglas's entry to or possession of the property, or the sale of personal property belonging to Douglas.

On November 30, 2022, Syre filed a motion to disqualify Douglas's counsel of record, California Indian Legal Services (CILS), alleging that CILS had a conflict of interests stemming from Syre's attempt to obtain legal representation by that public law office. On January 16, 2023, the trial court denied the motion to disqualify CILS, but

6

continued the stay of proceedings through January 24, to allow time to file an appeal. On January 27, Syre appealed the ruling.[1]

On May 2, 2023, Syre answered Douglas's cross-complaint. The following day, Syre lodged a title report for the subject property, reflecting that title to the real property was still held by the Trust. However, schedule B of the title report listed as "defects, liens [and] encumbrances" against the property the later transfers from Willett as an individual to herself and Syre as joint tenants dated April 12, 2013, as well as the transfer from Willett to Douglas dated May 11, 2021, noting that the grantor had no recorded interest in the land at the time of the transfers.

On May 15, 2023, Douglas renewed his motion for a preliminary injunction to enjoin Syre from possessing the property or from selling, giving away, destroying, or otherwise alienating personal property of Douglas's that was stored on the property.

On May 19, 2023, Syre filed a first amended complaint (FAC) that modified paragraph 18 of the original complaint. The modification included an additional sentence at the end of paragraph 18 of the FAC in which Douglass asserted he has a legally-cognizable possessory interest in the property that is adverse to Syre, and an amendment to paragraph 23, reflecting an increase in the fair market value of the property from $215,900 in the original complaint, to $271,836 in the FAC.

On June 9, 2023, Syre filed a second amended complaint (SAC), by leave of court.[2] In the SAC, paragraph 18 was amended to add an allegation that before her death

---

[1]    *Syre v. Douglas* (2024) 104 Cal.App.5th 280.
[2]    The introduction to the SAC refers to the document as the FAC.

in 2021, Willett executed a grant deed conveying her interest to Douglas by a grant deed, which Syre alleged was an invalid means to sever the joint tenancy created by the deed executed in favor of Syre. The last paragraph of the SAC was renumbered, but otherwise unchanged. The SAC also amended the renumbered paragraph 21, to reflect the fair market value of the property as $256,375.

On July 6, 2023, Syre opposed Douglas's renewed motion for a preliminary injunction arguing (1) Douglas's motion was based on matters related in the original complaint despite two substantive amendments having been filed; (2) Douglas could not show irreparable injury if a preliminary injunction were not issued; and (3) Douglas cannot establish a likelihood he would prevail on the merits, and after Douglas answered the SAC, the court heard the motion for preliminary injunction and took the matter under submission.

On July 31, 2023, the court issued a written ruling. The court concluded that Douglas did not have an adequate remedy at law because he claimed an ownership interest in the property, rendering damages inadequate. The court also rejected Syre's argument that granting injunctive relief would disturb the status quo because Douglas had been in possession of the property at the time of Willett's death, and it was Syre's unilateral action in excluding Douglas from accessing the property while he was temporarily away, in derogation of Douglas's claim.

Regarding the merits of the parties' competing claims, while the court acknowledged that Syre's claims derive from an agreement that was alleged to be written

but for which no writing had been presented, it observed that "the arguments about the merits of the case are equally balanced." The court then addressed the extreme hardship to Douglas of being excluded from the property where he had been living before Syre changed the locks and deprived Douglas of personal property that was left to Douglas (and to which Syre agreed she had no right or interest) when Syre either sold or discarded, favored Douglas's position. Because, as far as the court knew at the time, Syre was not residing at the property, allowing Douglas to have possession pending review of the merits of the case would cause minimal harm. The court ruled that the factors favoring Douglas warranted a grant of the preliminary injunction and directed Douglas to prepare the order.

On August 4, 2023, the court entered a minute order indicating that a red-lined version of the proposed order granting the preliminary injunction along with written objections by Syre, where, for the first time, the court was made aware Syre was in possession of the residence and that tenants were occupying the property, had been presented for review.[3] Therefore, the court prepared and issued the preliminary injunction. The injunction recognizes that pending adjudication of the matter, Syre and

---

[3] This fact was not alleged in any version of Syre's complaint, nor in her pleadings in opposition to Douglas's cross-complaint or his motion for preliminary injunction. At oral argument, Syre's counsel took issue with reference to "tenants" on the premises insofar as there was no evidence the occupants were paying rent. However, the trial court's short cause minute order dated August 4, 2023, indicated the trial court had received a letter brief from Syre disagreeing with the proposed order prepared by Douglas, and informed the court that "tenants are currently occupying the property." We have only adopted Syre's description of the occupants.

9

Douglas each have rights to the real property, as tenants in common, to a one-half undivided interests, and prohibits both parties from encumbering or transferring her or his interest, as the order was not a final adjudication of rights.

The order goes on to provide that notwithstanding the tenants-in-common status, and pending further court order, Syre will remain in exclusive possession of the property, but it directed her to pay to Douglas $1,000 per month for that exclusive possession. The amount ordered represents one-half the rental value of the home, less property-related costs, and one-half of the income generated by the real property, respecting the tenants who occupied trailers on the property. The order also enjoined Syre from selling, giving away, or otherwise disposing of any personal property belonging to Douglas, the Trust, or the trustee of the trust.

This appeal followed.

## DISCUSSION

1. *Injunctive Relief was Proper Where the Trial Court did not Award "Damages" and Found There was no Adequate Remedy at Law*

Syre argues that the equitable remedy of injunctive relief was improper in this case because, by awarding "damages" to Douglas, he had an adequate remedy at law. Syre points to and mischaracterizes the trial court's order that she make monthly payments for one-half the rental value of the property in return for her retention of possession of the property as indicative of the availability of an adequate remedy at law. Separately, Syre

argues the court erred in issuing the preliminary injunction where it did not find Douglas likely to succeed on the merits. We disagree.

a. *The Trial Court did not Award Damages to Douglas*

Syre mischaracterizes the court's order of payments of one-half of the rental value of the property to Douglas as "damages," where the record clearly reflects that the court ordered Syre to pay one-half the rental value of the property to compensate Douglas for Syre's exclusive possession and occupation of the property. Syre's lack of forthrightness in the trial court prevented the court from awarding Douglas possession of the residence on the property and Syre's unilateral exercise of dominion over trailers on the property, which were rented to third party tenants without Douglas's consent and without the knowledge of the court or Douglas, forced the court's actions.

Under the impression that the real property was not occupied, the court had issued a written minute order after the motion for preliminary injunction had been fully briefed and orally argued. The court's minute order ruling specifically rejected Syre's claim that there was an adequate remedy at law by observing that Douglas claimed an ownership interest in real property and that he was being denied access to that property. It stated, "[t]he court concludes that damages are not an adequate remedy in this case, where the dispute is about ownership and possession of real property."

The court's intention had been to award possession of the residence to Douglas, who was homeless and indigent, but that intention was frustrated when Syre finally revealed she was occupying the residence and tenants occupied the trailers. Having

determined that Douglas had an equal claim to an interest in the real property from which he was excluded, the court resolved to require Syre to pay one-half the rental value of the property to Douglas.

Syre's characterization of the interim monthly payments ordered by the court to be paid to Douglas as "damages" is misleading. The payments represent the amount of monthly rent Douglas is entitled to receive from Syre for her exclusive possession of commonly owned property. The preliminary injunction issued by the court after becoming aware of the previously undisclosed occupation of the property by Syre with the additional interests of tenants on the premises, did more than merely awarding "damages;" it awarded each party an undivided one-half interest in the real property as tenants in common. Such a disposition, accompanied by a prohibitory injunction against encumbering or transferring title to the property pending the final adjudication on the merits, was properly ordered by way of a preliminary injunction to maintain the status quo. (*Tulare Lake Canal Co. v. Stratford Public Utility Dist.* (2023) 92 Cal.App.5th 380, 396 (*Tulare Lake*).)

Therefore, the trial court did not award "damages" to Douglas. Instead, finding that a remedy at law was inadequate, and that balancing the hardships required compensating Douglas for Syre's exclusive possession of the property, the court issued the preliminary injunction finding that Douglas shared a one-half interest in the property and prohibiting Syre from interfering with his interest in the title to the real property as

12

well as prohibiting her from disposing of Douglas's personal property located on the premises.

2. *Whether the Trial Court Properly Found Douglas was Likely to Succeed on the Merits*

Syre argues that the trial court did not conclude that Douglas was likely to succeed on the merits, requiring reversal. We disagree.

In making this argument, Syre points to language used by the court in weighing the respective arguments of the parties, observing that "the arguments about the merits of the case are equally balanced", in asserting that the trial court failed to determine that Douglas was likely to succeed on the merits, but the record does not support her contentions.

a. *General Principles Governing Preliminary Injunctions*

The purpose of a preliminary injunction is to preserve the status quo until a final determination of the controversy following a trial. (6 Witkin, Cal. Procedure (6th ed. 2024) Provisional Remedies, § 268; see, e.g., *Tulare Lake*, *supra*, 92 Cal.App.5th at p. 396; *Scaringe v. J.C.C. Enterprises, Inc.* (1988) 205 Cal.App.3d 1536, 1542, disapproved on a different point in *Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 367; *O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1472.) "Granting or denying a preliminary injunction is not an adjudication of the ultimate rights in controversy." (*Tulare Lake*, at p. 396, citing *Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528.)

13

"To obtain a preliminary injunction, a plaintiff [or party seeking the injunctive relief[4]] ordinarily is required to present evidence of the irreparable injury or interim harm that it will suffer if an injunction is not issued pending an adjudication of the merits." (See *White v. Davis* (2003) 30 Cal.4th 528, 554 (*White*); *City of Torrance v. Transitional Living Centers for Los Angeles, Inc.* (1982) 30 Cal.3d 516, 526.)

A party seeking a preliminary injunction must show it is likely that she or he will prevail on the merits and that the relative balance of harms that is likely to result favors granting the injunction. (See *White*, *supra*, 30 Cal.4th at p. 554.) The greater the likelihood plaintiff (or cross-complainant) will prevail, the less plaintiff must show that the balance of potential harms favors granting the preliminary injunction. (*Butt v. State of California* (1992) 4 Cal.4th 668, 678 (*Butt*).)

However, as the court in *IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 73 (*IT Corp.*), noted: "'*The ultimate goal* of any test to be used in deciding whether a preliminary injunction should issue is to *minimize the harm which an erroneous interim decision may cause*.'" (See *White*, *supra*, 30 Cal.4th at p. 554.)

"The potential merit and interim harm are described as *interrelated* factors because the greater the plaintiff's showing on one, the less must be shown on the other to obtain an injunction." (*Tulare Lake*, *supra*, 92 Cal.App.5th at pp. 396-397; *Butt*, *supra*, 4

---

**4**     Most of the cases addressing entitlement to injunctive relief involve plaintiffs filing complaints in which injunctive relief is sought as a remedy. Here, defendant filed a cross-complaint in which he sought, among other things, injunctive relief. For convenience, we adopt the language of the cases in referring to the matters which a plaintiff seeking injunctive relief must establish, but the same principles apply irrespective of which party makes a motion for a preliminary injunction.

14

Cal.4th at p. 678.)  The goal of this test is to minimize the harm that an erroneous interim decision would cause.  (*White*, *supra*, 30 Cal.4th at p. 554; *People v. Uber Technologies, Inc.* (2020) 56 Cal.App.5th 266, 284.)

The trial court's evaluation and weighing of the parties' likelihood of success on the merits and the balance of harm is reviewed for abuse of discretion.  (*IT Corp.*, *supra*, 35 Cal.3d at pp. 69-70.)  "We review de novo the trial court's application of legal principles and we review its findings of fact under the substantial evidence standard." (*Anderson v. County of Santa Barbara* (2023) 94 Cal.App.5th 554, 568.)

b.  *Analysis*

The trial court observed in the order that the relative merits of the arguments of the two parties were "equally balanced," which Syre misconstrues to mean the court failed to find Douglas established a likelihood of prevailing on the merits.  This misses the mark where Douglas's motion for preliminary injunction simply requested that Syre be enjoined from excluding Douglas from possession of the property and prohibiting Syre from selling, giving away, destroying, or otherwise alienating personal property owned by Douglas.

In ruling in Douglas's favor on his motion for a preliminary injunction, the trial court expressly found that both Syre and Douglas had reasonable claims to a one- half interest in the real property as tenants in common, rejecting Syre's claim of entitlement to exclusive right and title to the property under the joint tenancy deed and the alleged agreement between Syre and Willett that Syre never produced.  The court necessarily

15

found Douglas was likely to succeed on the merits by ruling that he had an ownership interest in an undivided one-half interest in the real property as a tenant in common.

Although the trial court's finding that the parties' arguments were "well-balanced" is not as clear as it might have been, the court necessarily accepted Douglas's argument that he was legally entitled to at least a one-half interest in the property and entitled to possession of the residence,[5] which the trial court had intended to order prior to learning that Syre had assumed possession of the residence and had rented trailers on the property to third-party tenants. Obviously, if Douglas were not likely to succeed on his claim of a legal interest in the title to the property, the court could not and would not have recognized him as an owner of one-half interest in it as a tenant in common or considered allowing him to maintain possession of the residence. The court found Douglas was likely to succeed on the merits in asserting, at a minimum, he was entitled to a one-half interest in the property.

As to the correctness of the court's determination of Douglas's likelihood of succeeding in establishing his rights to an interest in the property based on the deed executed in Douglas's favor, we agree that Douglas did establish likelihood of success based on the state of title to the property. Although Willett executed the deeds in favor of each party as an individual rather than as trustee of her inter vivos trust, her transfers of interests in her real property are likely to be found valid and binding against the Trust. "A trust is simply a fiduciary relationship with respect to property. Legal title to property

---

[5] At the time of filing her complaint, Syre owned a home in Orange County, California, where she resided.

16

owned by a trust is held by the *trustee*, since the trust itself is simply a collection of assets and liabilities.  [Citation.]  A revocable inter vivos trust, like the Trust at issue here, is 'a probate avoidance device' that 'does not prevent creditors of the settlors—who are often also the trustees and the sole beneficiaries during their lifetimes—from reaching trust property.'"  (*JPMorgan Chase Bank*, *N.A. v. Ward* (2019) 33 Cal.App.5th 678, 685, citing *Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1349.)  Thus, "where a trustee signs a contract of sale or deed without reference to his or her representative capacity, the contract or deed is enforceable against the trust."  (*Galdjie v. Darwish*, *supra*, at p. 1349.)

In other words, the deeds executed in favor of both Syre and Douglas may ultimately determine that each party's claim to ownership is "equally balanced."  In this respect, it is more likely Douglas will succeed on his claim that he owns at least a one-half interest in the property than Syre is likely to succeed on her claim that she is entitled to exclusive ownership of the property, because Willett severed the joint tenancy when she deeded her remaining interest to Douglas.  Syre's unilateral act of excluding Douglas from the property without consent, or a writing to support her claim, was an unauthorized grab:  gutsy, but ill-advised.  Thus, Douglas established a likelihood of prevailing on the merits of his claim that he was entitled to at least a one-half interest in the title to the real property, and all the personal property located there.

Moreover, the court's conclusion was not an abuse of discretion given the balancing of harms and considering Syre's unilateral actions of physically excluding Douglas from the property and disposing of his personal property without authorization,

17

not to mention Syre's lack of forthrightness in informing the court that she had asserted exclusive possession of the property which was also subject to the rights of third party tenants. We can only assume that the tenants have been paying rent to Syre throughout her exclusive possession, in derogation of Douglas's claimed rights, because there is no dispute in this record that Douglas is both homeless and indigent by virtue of Syre's act of excluding him from the residence. The court's finding that the balancing of harms weighed in Douglas's favor is supported by the record and was a proper discharge of its discretion.

The court did not abuse its discretion in issuing a preliminary injunction to maintain the status quo and prevent further sale or destruction of the personal property on the premises.

### DISPOSITION

The judgment is affirmed. Douglas is entitled to costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

McKINSTER
J.
FIELDS
J.