Filed 12/13/21  Rezzadeh v. Chiu CA5

## <u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RUDY REZZADEH,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>JOHN C. CHIU et al.,<br><br>    Defendants and Respondents. | F080263<br><br>(Super. Ct. No. BCV-16-101978)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  Gary T. Friedman, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)

Arent Fox, Malcom S. McNeil and Stefan Bogdanovich for Plaintiff and Appellant.

Tressler, Karl P. Schlecht and Judy Y. Chiang for Defendants and Respondents.

-ooOoo-

Appellant Rudy Rezzadeh appeals following a trial court order denying his request to enforce a settlement agreement.  The agreement previously resolved litigation surrounding the purchase of an apartment building owned by one or more of respondents John C. Chiu (Chiu), PARS-15, LLC, and Presidential California Financial Funding, LLC (Presidential).  Appellant contends, however, that respondents continued to stymie the sale of the building after the agreement and eventually improperly closed escrow, thereby preventing the sale from concluding.  Of course, respondents claim it was appellant who

failed to close the deal, arguing they were within their rights to close escrow when appellant failed to fund the transaction as required.

Following a motion under Code of Civil Procedure section 664.6 for an order to enforce the settlement agreement, the trial court issued an order refusing to enforce the settlement agreement because appellant's failure to fund the purchase prior to the close of escrow triggered a time is of the essence clause, permitting respondents to terminate the purchase immediately. Upon review, we find the trial court properly set forth the terms of the settlement agreement and that the trial court's factual findings are supported by substantial evidence. However, we conclude that the trial court failed to recognize the full scope of the settlement agreement in its legal analysis. Specifically, the court failed to give effect to the specific agreement between the parties that a breach preventing the timely close of escrow triggers a required notice to close escrow and three-day period to cure. Although time is of the essence clauses are strictly construed, they cannot be used to eliminate specific terms of the contracts to which they are attached. Rather, the parties are generally bound to their agreements as made. Time is of the essence clauses are strictly construed to permit immediate termination when no other provisions control, not when the parties reached a separate understanding. Accordingly, for the reasons set for below, we reverse the trial court's order and remand for the trial court to enter an order enforcing the settlement agreement.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

In April 2016, appellant (the buyer in the purchase agreement) and Chiu, acting on behalf of Presidential (the seller), entered into a residential income property purchase agreement, utilizing a standard preprinted form offered by the California Association of Realtors. The agreement was to purchase an apartment complex in Kern County. Both

---

**1** Both appellant and respondents have filed motions for judicial notice. No objections have been filed. Upon review, appellant's motion for judicial notice filed April 29, 2020, and respondents' motion for judicial notice filed May 29, 2020, are GRANTED.

parties utilized the same real estate agent. The agreed purchase price was $6.5 million, with escrow to close 120 days after acceptance.

Relevant to the arguments in this appeal, the form contract contained several paragraphs containing provisions that could be utilized to regulate the execution of the purchase and the information that should be exchanged. Some of these paragraphs were utilized and others remained blank.

In paragraph 3.A., an initial deposit of $190,000 was required. In paragraph 3.C., the contract contained a provision titled "**ALL CASH OFFER**." This provision was not marked as selected but explained that such agreements are "NOT contingent on Buyer obtaining a loan." The immediately following paragraph 3.D. provided an opportunity to disclose the loans, if any, that would be used to finance the purchase. No information was marked as selected or added in this paragraph either. Rather, in paragraph 3.F., the contract noted that a "**BALANCE OF DOWN PAYMENT OR PURCHCHASE PRICE** in the amount of … *$6,310,000.00*" would be required, "to be deposited with Escrow Holder pursuant to Escrow Holder instructions."

In paragraph 5, the parties noted the existence of an agreed upon addendum. This addendum explained that one of the structures had been damaged by fire and affirmed Presidential would repair the damage. Presidential also agreed to provide 16 types of documents "if applicable and in its possession." These included property operating statements for three prior years, complete and current rent rolls, all rental agreements, utility bills for the prior 12 months, service contracts, and extraordinary expense statements.

Paragraph 13 contained seller documentation and additional disclosure requirements. These included all current leases and agreements pertaining to operation of the property along with rental statements for all tenants as kept in the ordinary course of business, the books and records for the property, engineering documents, permits, and documentation of any prior structural modifications. In addition, the parties specifically

checked the box for paragraph 13.C., titled "**TENANT ESTOPPEL CERTIFICATES**." This paragraph required Presidential to provide "tenant estoppel certificates [utilizing a standard form] completed by Seller or Seller's agent, and signed by tenants" essentially confirming the existing rental agreements have not been modified and are not in default.

These and other requirements were subject to the timing provisions of paragraph 19, which stated time periods could "**only be extended, altered, modified or changed by mutual written agreement.**" Under this paragraph, after acceptance Presidential had seven days to provide their required materials and appellant had 17 days to "complete all Buyer Investigations; review all disclosures, reports, lease documents … and other applicable information …." After this point, appellant was required to release all contingencies or cancel the agreement, with an additional five days added from the point any required disclosures were belatedly provided.

Paragraph 19.C. then laid out Presidential's right to cancel. For example, paragraph 19.C.(2) permitted Presidential to cancel "after first delivering to the Buyer a [Notice to Buyer to Perform]" if "by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A or 3B … (iv) Deliver verification as required by paragraph 3C or 3H …."

Paragraph 19.F. added additional requirements to cancel in the event one party failed to close escrow. This paragraph provided that before "Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow ([using a standard DCE form]). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least **3 (or ___ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow."

4.

Finally, paragraph 38, titled "**TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES**," included the sentence: "Time is of the essence." The remainder of the paragraph then discussed statute of frauds, choice of law, and other standard legal issues.

Apparently, there were immediate issues with completing the purchase. Thus, in August 2016, appellant filed suit seeking specific performance. The complaint alleged that PARS-15, LLC, also owned by Chiu, was the proper owner. It further alleged that Chiu had attempted to cancel the sale, forcing appellant to send a "Notice to Seller to Perform."

Despite the conflict, the parties agreed to settle following a mandatory settlement conference. On March 14, 2019, their agreement was placed on record. The relevant portion stated by Chiu's counsel provided:

"[T]he settlement is that [appellant] will purchase the property that is identified in the complaint for six million five hundred and fifty thousand dollars. It will be subject to the terms of the original contract and escrow instructions. The length of the escrow will be four months with the option of the seller to extend it twice, one month each time. The escrow instruction and contract will be modified in terms of the price and the escrow period as discussed above.

"And the term in the addendum to the escrow—addendum to the contract requiring the defendants to repair the fire damaged building will be deleted since the building has been repaired. [¶] … [¶]

"The buyer will cooperate in 1031 [tax] exchange as long as it is at no cost to him. Each side will bear their own attorney's fees and costs.…"

Additional clarifications included that "PARS-15, LLC is the owner of the property" and will be bound by the settlement; that the deposit shall be applied to the purchase, as opposed to refunded; that the "dates with the escrow instructions shall be modified to be consistent with dates agreed here today," meaning "if the record was to say a closing date in 2016, of course, we'll modify the dates to be consistent with" an

5.

agreement starting March 18, 2019; and that any 1031 tax exchange efforts would not increase cost or delay to respondents. Respondents also agreed to "cooperate and provide financial records and rent rolls to the buyer."

The pending trial date was vacated, and the court stated it would "retain jurisdiction of the terms of the settlement" under Code of Civil Procedure section 664.6.[2] Again, however, problems arose.

In early April and throughout May 2019, appellant's counsel sought information on whether escrow had been reopened, asked for required documents from respondents, and asked Chiu to allow his bank to utilize information on the property in processing a loan application from appellant. By June 2019, appellant still did not have respondents' documents or Chiu's consent for the loan issue, despite statements he would receive them. As a result, appellant filed a motion to compel. This apparently resulted in respondents providing additional documentation on June 25, 2019, and consent for the bank to utilize its existing information on June 27, 2019. But no tenant estoppel certificates or lease agreements were provided.

Shortly thereafter, appellant requested to extend escrow until August 31, 2019. It appears he had identified potential financing for the property that could be completed by that date. Appellant's counsel states he was told by opposing counsel that they would speak with Chiu about obtaining an extension.

On July 22, 2019, however, appellant received notice that respondents had instructed the escrow company to cancel the escrow. Appellant filed a motion to enforce the settlement agreement which, after full briefing, was ultimately heard on September 30, 2019.

Following the hearing, the trial court requested proposed findings of fact and conclusions of law from both parties. In appellant's submission, appellant raised the

---

**2** All future statutory references are to the Code of Civil Procedure unless otherwise noted.

factual and legal arguments now presented on appeal. The court, however, chose to adopt respondent's findings of fact and conclusions of law, essentially in toto.

In its six-page order dated October 23, 2019, the court made several relevant findings of fact and conclusions of law. All matched respondents' draft order. With respect to the terms and conditions of the prior settlement, the court found: "1) the Parties agreed to a $6,550,000 sale price subject to the terms of the original escrow instructions and contract, 2) the original sale was all-cash with no loan contingencies, 3) pursuant to paragraph 38 of the original contract, time was of the essence, 4) the Parties agreed to start a four-month escrow on March 18, 2019, 5) only Seller had the option to extend the escrow, and 6) Seller agreed to 'cooperate and provide financial records and rent rolls to the buyer.' "

The court further found that 392 pages "of rent rolls and monthly income/expense statements" covering January 2017 through November 2018 had been provided on December 26, 2018, and an additional "five months [of] financials and rent rolls" were provided on June 25, 2019, "a full TWENTY-THREE DAYS prior to the close of escrow." Additionally, the court found that appellant's lender " 'was satisfied with the documents provided' " as of July 16, 2019, that by agreement only Seller could extend escrow past July 18, 2019, that "Seller was ready to fully perform on or before the final day of escrow," and that "Buyer failed to deposit any of the remaining $6,360,000 purchase monies needed to timely close escrow." Thus, the court found, "[e]scrow closed, no funds were received, and Seller [now] seeks to cancel escrow," noting "after escrow expired and [no] funds were received, Seller cancelled escrow and does not want to move forward with the untimely transaction." The court added that although "Buyer claims to have the necessary funds," he has "not provided escrow with any additional funds despite having over 80 days to do so since the lawful close of escrow and over 50 days since claiming to have the cash."

Based on these findings, the court concluded it had jurisdiction to enforce the settlement agreement that had previously been entered into the record. The court explained that the agreement should be treated like a contract and that California law generally requires contracts be performed in the time limits stated, especially when a time is of the essence clause is included. The court found that performance was to be completed by July 18, 2019, that time was of the essence, and that the meaning of this clause was not ambiguous. The court determined that a key term of the agreement was that escrow receive full funding of the purchase by its closing date, that this was not done, and that California law would not treat a buyer able to make payment as one that had made payment.

Relying on *Pittman v. Canham* (1992) 2 Cal.App.4th 556, 559–560 (*Pittman*), the court explained that "[w]hen time is of the essence and the time has expired, both parties are discharged" and either "party can terminate the transaction without liability, even though the party has neither performed nor tendered performance, assuming the terminating party has not waived the timeliness requirement." Applying this principle, the court concluded, "time was of the essence, Buyer made no final payment, Buyer presented no evidence of waiver or potential forfeiture, and Seller did not waive the timeliness requirement." Accordingly, "the transaction was terminated, and Seller was within its right to cancel the contract."

The court wrapped up its findings with a conclusion that "Seller did not prevent Buyer's performance." Although noting "an important exception to discharge … wherein seller's failure to perform prevents the buyer from performing," the court found "Seller provided Buyer with enough information to timely close" given that no loan contingencies were in the agreement. The court thus determined appellant had received his benefit of the bargain and chose not to complete the sale. This warranted denying appellant's motion to enforce the settlement agreement.

This appeal timely followed.

## DISCUSSION

The parties' arguments in this case raise several procedural and substantive issues. Initially, they dispute how this court should treat the trial court's order denying appellant's motion to enforce the settlement agreement. Although framed in the context of whether a remand to set forth additional terms of the settlement is needed, the dispute itself raises a jurisdictional concern as to how we should treat the fact the trial court did not enter a final judgment. As part of this issue, the parties have different takes on how this court should proceed under section 664.6, if it does have jurisdiction. Assuming this court reaches the specific terms of the settlement agreement, the parties differ over whether certain provisions of the agreement constitute conditions precedent to termination, whether the time is of the essence clause controls despite these provisions, and whether the agreement actually called for a reasonable time to close. In aid of his interpretation of the case, appellant raises certain factual disputes with the trial court's order which he contends caused the trial court to improperly find appellant was the breaching party. Finally, for the first time on appeal, appellant argues estoppel should preclude any reliance on the time is of the essence clause.

*This Court's Jurisdiction*

We begin, as we must, with this court's jurisdiction to hear the appeal. "The existence of an appealable judgment or order is a jurisdictional prerequisite to an appeal." (*Harrington-Wisely v. State of California* (2007) 156 Cal.App.4th 1488, 1494.) A judgment that leaves nothing to be decided between the parties is final and appealable. (§ 904.1, subd. (a)(1); *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 741.) Although judgments typically resolve a contest of law or facts, they also may be entered to enforce a settlement agreement. (See *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 797 (*Weddington*).)

The parties and the trial court frame the dispute in this case in the context of respondents' actions—essentially asking whether respondents were within their rights to

9.

cancel escrow. The trial court's order thus reads like the resolution of a summary judgment claim on a contract. Within this framing, the trial court resolved what we consider to be the core issue in this case: the extent to which and manner by which the settlement agreement permits cancellation of escrow. In its selection of competing drafts of the proper factual and legal analysis, the court necessarily rejected appellant's position that the agreement required prior notice to cancel and appellant's claim that his performance was excused by respondents' own failures under the agreement.[3]

In ultimately concluding respondents could properly cancel escrow based on appellant's failure to fund the purchase, the court necessarily identified the controlling terms of the agreement and resolved all remaining disputes between the parties. And by rejecting appellant's motion to enforce the settlement agreement because there was no breach by respondents, the court's order functionally terminated all litigation between the parties. Like the court in *Hines,* we conclude this resolution is sufficient to be treated as a final appealable judgment. (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1183 (*Hines*).)

Based on its references to the incorporation of the original sales agreement, the parties' oral agreement, and specific provisions of the original sales contract, the judgment identifies the full scope of the settlement agreement and, ultimately, reveals the trial court's conclusion that the "time is of the essence" clause predominates over any additional terms in the purchase agreement. Thus, appellant's motion was denied because the trial court found a valid settlement agreement existed but determined the agreement was not what appellant argued. We see no functional difference with respect to conducting a jurisdictional analysis from that in *Hines*, where the court found a valid settlement agreement and then enforced it. In both cases the trial court's order resolved

---

[3]    The first of these issues raises a legal dispute about the terms of the agreement while the second raises both factual issues regarding the parties' conduct and legal issues regarding their required performance under the agreement.

10.

all disputes over the settlement agreement at issue and was thus treated as a final judgment. Indeed, if this were not the case the trial court's order would be insulated from any form of review regardless of whether the court properly understood the settlement agreement or simply made up a new set of terms. A respondent would merely need to argue that the request for enforcement was denied and, thus, no judgment was needed. As discussed further below, however, the court's entry of judgment is a necessary component of enforcement under section 664.6, regardless of how the agreement is enforced. Orders finally resolving disputes should thus be treated as appealable judgments if the court does not enter a separate judgment.

*The Trial Court's Section 664.6 Order is Procedurally Sufficient*

Moving on from the jurisdictional concern, the parties differ over how this court should proceed given the order issued by the trial court. Appellant argues that the order is insufficient as a judgment under *Hines* because it "states some of the settlement terms, but omits others." Respondents reiterate their claim that there was never any need for the trial court to enter a judgment, both because it was not formally requested and because the settlement was already enforceable, before arguing the trial court did not omit any material terms. We first review the requirements when conducting proceedings under section 664.6 and our relevant standard of review. We then apply those principles to the court's action in this case. We ultimately conclude the trial court's order is procedurally sufficient.

"Prior to the enactment of section 664.6, a party seeking to enforce a settlement agreement had to file a new action alleging breach of contract and seeking either contract damages or specific performance of the settlement terms, or alternatively had to supplement the pleadings in a pending case. [Citations.] Although a summary judgment motion could be filed based on the newly pleaded contract or specific performance claim, summary judgment could be granted only if the opposing party failed to raise a triable issue of fact. [Citation.] Expeditious enforcement of a settlement agreement was

11.

therefore not always possible. [¶] Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit." (*Weddington*, *supra*, 60 Cal.App.4th 793, 809.) It does so by converting the settlement agreements into judgments that are then enforceable by the original court. (*Id.* at p. 797.)

Section 664.6, subdivision (a) provides that if "parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." Under this statute, the trial court must first determine whether the parties reached a valid and binding settlement. (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360.) "If the court determines that the parties entered into an enforceable settlement, it should grant the motion and enter a formal judgment pursuant to the terms of the settlement." (*Hines*, *supra*, 167 Cal.App.4th at p. 1182.) It may then enforce or not enforce the judgment through its inherent powers and the summary proceedings of section 664.6. (*Machado v. Myers* (2019) 39 Cal.App.5th 779, 796 fn. 13 (*Machado*); *Wackeen v. Malis* (2002) 97 Cal.App.4th 429, 432 fn. 1, 439–440.)

We exercise our independent review when interpreting section 664.6 and when determining whether the trial court satisfied the strict requirements of that statute. (*Machado*, *supra*, 39 Cal.App.5th at pp. 790–791.)

In this case, the parties do not dispute that a proper and binding settlement agreement exists. Moreover, the record shows that the parties orally agreed to the settlement as read into the record and that the specific terms of the agreement were known because the parties specifically incorporated the prior sales contract and escrow instructions, subject to any modifications specifically placed on the record. The court's

12.

order itself states that purchase under the settlement would be "subject to the terms of the original escrow instructions and contract." Given that the relevant disputes in this case center on the meaning of provisions contained in the original purchase agreement, as potentially modified by the oral statements to the court, we find the court's recitation of the settlement in its order sufficient to satisfy the requirements of section 664.6. We thus find no procedural defect in the trial court's order.

*Reviewing the Settlement Agreement*

Having concluded the trial court's order is procedurally sufficient, we turn next to the substantive arguments made regarding the court's analysis of the settlement agreement and its related findings. Here, appellant raises both factual and legal arguments. Factually, appellant contends that the trial court wrongly concluded that (1) the underlying agreement was an all cash deal and (2) appellant had enough time to complete due diligence once documents were provided. Legally, appellant argues the trial court incorrectly analyzed the terms of the settlement agreement to strictly enforce the time is of the essence clause. Appellant believes the agreement actually provided a "reasonable time to close" and did not permit respondents to unilaterally cancel escrow based on various conditions precedent contained in the agreement. Appellant also raises a breach of good faith and fair dealing and an equitable estoppel argument to prevent enforcement of the time is of the essence clause.

*The trial court's factual findings are proper*

In support of appellant's legal arguments, appellant contends that two factual findings made by the trial court, and allegedly relied upon in its order, were not supported by substantial evidence. These findings were that the underlying agreement was an all cash deal and that appellant had enough time to complete due diligence once documents were provided. Appellant's underlying arguments partially turn on a claim that the contract contemplated and granted appellant a right to seek and obtain financing for the purchase. Thus, appellant argues, the incorrect factual findings that the deal was an all

13.

cash transaction and that appellant had sufficient time to review the financial documents produced caused the trial court to wrongly conclude respondents were not at fault for any breach caused by appellant failing to obtain financing for the purchase. We do not agree.

We review for substantial evidence the court's factual findings on a motion to enforce a settlement. (*Williams v. Saunders* (1997) 55 Cal.App.4th 1158, 1162.)

Appellant argues his contractual right to secure financing is demonstrated through the fact that the purchase agreement does not have the box checked next to the all cash offer option in paragraph 3.C. However, the evidence does not compel a finding that failing to check this box indicated a loan would be utilized to purchase the property. As noted above, the form contract also contained paragraph 3.D. for disclosing any loans upon which the purchase would be contingent. And this option was not checked either. Rather, reading the contract as a whole reveals a set purchase price, a deposit, and a total that would need to be deposited to close escrow. The trial court was well within its discretion to determine that this structure was all cash with no loan contingencies. That it utilized the term all cash offer to describe this arrangement does not indicate an error on the court's part. Rather, such a framing is consistent with its conclusion that there were no contingencies included for a loan.

Based in part on this factual conclusion, we also find substantial evidence supports the trial court's statement that appellant had sufficient time to review the financial documents provided by respondents. As the court found, there was no loan contingency in the agreement. In addition, the record shows that the parties agreed to a specific period of time in which to review financial documents, 17 days. As the court noted, substantial financial documents were provided to appellant more than 17 days before the close of escrow. Further, the record does not indicate that appellant sought to enforce his right to obtain other required documents, such as the tenant estoppel certificates, through a notice to perform. Finally, the trial court also found that appellant's bank was satisfied with the documents provided before the close of escrow. Based on these facts, the evidence

14.

supports the trial court's factual conclusion that appellant received sufficient documentation with sufficient time for review to close escrow. That his bank may have desired additional time does not change this conclusion, as the court properly concluded that appellant had no contractual right to insist upon time to secure a loan.

We thus reject appellant's assertions that the trial court's factual findings were improper. Having reached this conclusion, we need not reach appellant's arguments that require reversing the trial court's factual determinations, such as appellant's claims that the trial court wrongly concluded respondents had not caused the failure to fund based on their lack of production of documents, respondents breached the covenant of good faith and fair dealing by delaying documents critical for obtaining financing, or the contract called for a reasonable escrow closing date.

### *The trial court's core legal conclusion is flawed*

We therefore turn to the court's ultimate legal conclusion. Here, appellant takes issue with the trial court's finding that the time is of the essence clause controls over other provisions of the sales agreement as incorporated into the settlement agreement. More specifically, appellant argues that the requirement for 3-day notice before termination of the agreement is a condition precedent that is not affected by the time is of the essence clause. Respondents argue this notice provision is not a condition precedent and, regardless, the settlement agreement should be construed to disregard the provisions based on the time is of the essence clause. We agree with appellant.

### Relevant Law

In entering judgment and enforcing it, the "trial court is empowered under section 664.6 to resolve reasonable disputes over the terms of the settlement." (*Machado*, *supra*, 39 Cal.App.5th at p. 795.) " 'A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts.' " (*Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 36.) In addition, a "settlement agreement which incorporates other documents can be

enforced pursuant to section 664.6, but only if there was a meeting of the minds regarding the terms of the incorporated documents." (*Weddington*, *supra*, 60 Cal.App.4th at p. 814.)

"Courts seek to interpret contracts in a manner that will render them ' "lawful, operative, definite, reasonable, and capable of being carried into effect" ' without violating the intent of the parties." (*Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 745.) "The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties as it existed at the time they entered into the contract. [Citations.] That intent is interpreted according to objective, rather than subjective, criteria." (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1385.)

" 'Extrinsic evidence is admissible to prove a meaning to which the contract is reasonably susceptible. [Citations.] If the trial court decides, after receiving the extrinsic evidence, the language of the contract is reasonably susceptible to the interpretation urged, the evidence is admitted to aid in interpreting the contract.' " (*Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 8.) However, when "the contract is clear and explicit, the parties' intent is determined solely by reference to the language of the agreement. (Civ. Code, §[ ] 1638 ['language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity'], [citation].)" (*Klein v. Chevron U.S.A., Inc.*, *supra*, 202 Cal.App.4th at p. 1385, first & third bracketed insertions added.)

The time is of the essence clause is not dispositive

The fundamental question raised in this case is whether the time is of the essence clause excuses respondents from failing to utilize the notice provision contained in paragraph 19.F. prior to terminating the purchase agreement. Relying on *Pittman*, respondents argue this is the case because the close of escrow creates concurrent conditions that, if not met, "result[] in a discharge of both parties' duty to perform" when backed by a time is of the essence clause. (*Pittman*, *supra*, 2 Cal.App.4th at p. 560.) Citing to *Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331 (*Galdjie*), respondents further

16.

note that time is of the essence clauses are generally strictly enforced in California and thus argue that appellant's failure to perform his side of the agreement in a timely manner justified respondents' decision to terminate escrow.

Although we acknowledge the general strictness applied to a time is of the essence clause, we find the specific terms of the agreement in this case distinguish it from those where unilateral action on the part of the aggrieved party was permitted. Accordingly, although the trial court correctly concluded that appellant's failure to proffer funding prior to the close of escrow created a breach, the court incorrectly concluded that respondents could terminate the agreement with no further action.

We begin with respondents' claim that *Pittman* dictates a dual discharge of the parties' duty to perform in this case. In *Pittman* the plaintiff, a real estate broker, entered into a contract with an elderly woman to purchase a 56-acre property for $250,000. (*Pittman*, *supra*, 2 Cal.App.4th at p. 558.) The plaintiff drafted a contract in November 1987 and deposited $1,000 in escrow, with requirements that an additional $24,000 be deposited, the remainder be paid by a deed of trust, and escrow to close in 30 days. (*Ibid.*) The contract included a time is of the essence clause. (*Ibid.*)

Prior to escrow closing, the seller provided a signed deed, but failed to get it notarized. (*Pittman*, *supra*, 2 Cal.App.4th at p. 558.) When the closing date passed, the seller had not provided a notarized deed and the plaintiff had not tendered the $24,000, a promissory note or a deed of trust. (*Ibid.*) In May 1988, the seller informed the plaintiff she would sell to another party. This resulted in the plaintiff suing to obtain the property. (*Id.* at pp. 558–559.) The trial court ultimately rejected the assertions in the plaintiff's lawsuit, concluding the plaintiff was responsible for the delay, the seller had not waived time, and thus that the plaintiff had defaulted when he failed to tender payment. (*Id.* at p. 559.)

The court of appeal affirmed. Rejecting the plaintiff's argument that he could not be in default because payment and transfer of the property were concurrent conditions,

17.

meaning his payment requirement was not a condition precedent to completing the sale, the court explained that "[c]oncurrent conditions are conditions precedent which are mutually dependent, and the only important difference between a concurrent condition and a condition precedent is that the condition precedent must be performed before another duty arises, whereas a tender of performance is sufficient in the case of a concurrent condition." (*Pittman*, *supra*, 2 Cal.App.4th at p. 559.) The court explained that "the failure of both parties to perform concurrent conditions does not leave the contract open for an indefinite period so that either party can tender performance at his leisure." (*Ibid.*) Rather, "failure of both parties to perform concurrent conditions during the time for performance results in a discharge of both parties' duty to perform. Thus, where the parties have made time the essence of the contract, at the expiration of time without tender by either party, both parties are discharged." (*Id.* at pp. 559–560.)

The court also rejected the plaintiff's argument based on additional language in the escrow instructions stating that although time is of the essence, " '[i]f no demand for cancellation is made, you will proceed to close this escrow when the principals have complied with the escrow instructions.' " (*Pittman*, *supra*, 2 Cal.App.4th at p. 560, brackets in original.) The court found this provision could not override the time is of the essence clause in the contract because it "merely instructs the escrow holder not to cancel escrow on its own initiative, but to close escrow should the parties voluntarily and nothwithstanding discharge mutually decide to perform." (*Ibid.*)

The present case mirrors *Pittman* in many ways. The parties agreed time was of the essence, both in their original agreement and by incorporating their purchase agreement into their settlement of disputes arising under that agreement. Further, the purchase agreement contained concurrent obligations to fund the purchase and provide the necessary documents to transfer ownership at the close of escrow. However, the contract in this case also included an additional clause that was not present in *Pittman*, paragraph 19.F. As noted, this paragraph dealt specifically with how the parties must act

to cancel the transaction if one or the other failed to properly close escrow. It provided: "Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow" which would "give the other Party at least **3 (or ___ ) Days** after Delivery to close escrow." Such a notice could not be provided more than 3 days prior to the stated close of escrow, meaning it could be used to enforce the agreed-upon date to close escrow or, if not utilized, would extend the close of escrow while disputes or unforeseen problems were resolved.

In other words, if one wanted to terminate the agreement on the day escrow was scheduled to close, the contract required them to notify the other party of their intent and to provide an opportunity to close escrow in a timely manner. Indeed, if either party wanted to terminate the agreement for failure to close escrow, even if the time to close had passed, they were required to provide a three-day notice and opportunity to cure the failure. In essence, the contract itself waived the time is of the essence clause with respect to the close of escrow unless one party affirmatively chose to enforce the deadline. Such a provision is not surprising, as it permits parties to effectively deal with any unexpected delays and provides ample opportunities to close the agreed upon deal while ensuring that one may terminate the agreement at any time at or after the close of escrow if they are unwilling to continue.

In *Pittman*, there is no indication the parties reached an explicit agreement on how to proceed once a breach occurred. Thus, the court determined that once a breach of concurrent conditions occurred, both parties were discharged and the contract could be cancelled by either or completed by mutual agreement. Here, however, the form contract used by the parties contemplated just the type of dispute that led to cases like *Pittman*. By utilizing the form contract, the parties entered into a specific agreement on how to proceed upon a failure that caused escrow not to close. The contract provided one last

19.

chance to ensure performance through a demand to perform and a three-day window to cure prior to permitting termination.

The time is of the essence clause in this case certainly created the possibility of a breach and potential discharge of both parties' obligations upon the agreed upon close of escrow. However, we do not agree that it also discharged any obligation to follow the specific provision of the contract dictating how to terminate the agreement in the event of failure to close. In this sense, respondents' citations to *Galdjie*, *supra*, 113 Cal.App.4th 1331 and *Major-Blakeney Corp. v. Jenkins* (1953) 121 Cal.App.2d 325 are not compelling. While both cases affirm that time is of the essence clauses are strictly construed, neither deal with a situation where additional provisions in the contract control how to proceed once escrow fails to close. In fact, in *Galdjie*, despite finding the time is of the essence clause should be strictly construed, the appellate court ultimately upheld a finding the contract had been improperly terminated in part because the seller "waived the time provisions by continuing to deal with [the] respondent after the dates specified in the contract" and "did not reestablish time conditions by giving notice that the deal must close by a certain date," instead choosing to simply cancel escrow without notifying the other party. (*Galdjie*, *supra*, 113 Cal.App.4th at p. 1340.) The appellate court noted *Pittman* was not controlling in part because, in contrast to their case, the plaintiff in *Pittman* "had no excuse for failing to at least tender performance, and no reason to believe that the time condition had been waived." (*Id*. at p. 1342.)

In this case, appellant was entitled to notice that the agreement would be terminated and was not provided that notice. While it is correct that only the seller could extend escrow under the oral terms of the settlement agreement, there is nothing in the record indicating that this right to extend could not be granted through failure to cancel or that the unilateral right to extend escrow was intended to override the express cancellation terms contained in the written document incorporated into the settlement agreement. Accordingly, we consider this case, like *Galdjie*, to be less akin to *Pittman*

20.

and more like those cases that distinguish *Pitman's* strict reading of a time is of the essence clause. (See *Galdjie*, *supra*, 113 Cal.App.4th at p. 1342.) Regardless of any mistaken belief he was entitled to additional documents or loan support, appellant was entitled to notice of cancellation and an opportunity to close the deal with a cash payment under the contract.

Appellant could reasonably rely on the contract's requirement to notify him of cancellation based on the failure to close escrow. The time is of the essence clause has no bearing on the express obligation to affirmatively notify the opposing party of termination if escrow does not close and thus cannot be strictly construed to discharge both parties' responsibility to perform without further action. The trial court thus incorrectly determined that respondents were permitted to terminate the purchase agreement at the point escrow was scheduled to close. Having reached this conclusion, we need not consider whether equitable estoppel precludes relying on the time is of the essence clause in this instance.

*Conclusion*

Although time is of the essence clauses may support a discharge of one or both parties' obligations to perform a contract by affirming that the failure to act constitutes a breach, this result is not absolute. The specific terms of the contract will control when the parties agree upon a course of action that should occur upon default or breach. In this case, the parties agreed upon a form contract that included specific provisions designed to facilitate closing the planned transaction in the event of a failure that disrupted the close of escrow. In doing so, they parties deprioritized their ability to cancel the agreement quickly and unilaterally in favor of a process that provided notice and an opportunity to cure before termination. The trial court's order focused exclusively upon the effect of a time is of the essence clause generally but failed to account for additional terms of the contract that controlled even when the time is of the essence clause triggered a potential breach. In this way, the trial court erred in interpreting the contract. Its analysis read the

21.

notice and cure provisions when escrow fails to timely close out of the agreement and prioritized the time is of the essence clause even though the notice provision could be utilized prior to the close of escrow to effectuate that clause's general effect.

While this agreement has been overrun with disputes between and failures on both sides, the agreement the parties entered into could not be terminated unilaterally if escrow failed to close on the date set. We conclude the trial court correctly resolved all but this one aspect of the pending disputes. Accordingly, we reverse the trial court's order and remand for the trial court to enter a new order that requires respondents to provide a demand to close escrow and a three-day opportunity to do so before terminating escrow.

## DISPOSITION

The appealed order, treated as a final appealable judgment, is reversed and the matter remanded for the trial court to enter a new order that requires respondents to provide a demand to close escrow and a three-day opportunity to do so before terminating the purchase agreement incorporated into the parties' settlement. Appellant is entitled to his costs on appeal.


                                                                HILL, P. J.

WE CONCUR:


LEVY, J.


DETJEN, J.


22.