Filed 12/20/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LUCY MANCINI NEWELL, <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br> Respondent; <br><br> NENETH D. ROLLINS, <br><br> Real Party in Interest. | B339383 <br><br> (Los Angeles County Super. Ct. No. 23STPB02659) |

ORIGINAL PROCEEDINGS in mandate. Jessica A. Uzcategui, Judge. Petition granted.

Fuller & Fuller, Bruce Fuller and Joshua Maldonado for Petitioner.

No appearance for Respondent.

The Burbank Firm, James G. Morris and Diana Lam for Real Party in Interest.

————————————

# INTRODUCTION

Lucy Mancini Newell was supposed to be the trustee and sole beneficiary of her parents' trust. But after her father, Arthur Mancini, died in his early 90's, Newell learned he had amended the trust to name his 56-year-old caregiver, Neneth Rollins, as the trust's trustee and sole beneficiary.

Newell filed a petition challenging the validity of the trust amendments that changed the trustee and beneficiary of the trust from Newell to Rollins. And when Newell discovered Rollins used trust assets to purchase real property, Newell recorded a lis pendens against the property and amended her petition to include, among other things, a request to impose a constructive trust on the property.

Rollins moved to expunge the lis pendens under Code of Civil Procedure section 405.31.[1] The probate court granted the motion, ruling Newell's petition did not contain a "real property claim," within the meaning of section 405.4. Because Newell's petition, if successful, would affect title to the property, she pleaded a real property claim. Therefore, we grant Newell's petition for writ of mandate, direct the probate court to vacate its order granting the motion to expunge, and direct the court to enter a new order denying the motion.

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

2

## FACTS AND PROCEDURAL BACKGROUND

Arthur and Julia Mancini created the Mancini Family Trust in 2002 and named Newell and her two siblings as the beneficiaries following the surviving parent's death. Julia died in 2009. Some years after Julia died, Arthur amended the trust and named Newell the successor trustee and sole beneficiary of the trust following his death.

Rollins began working as Arthur's caregiver in July 2020, when Arthur was 89 years old. Rollins was 56. Six months later, in January 2021, Arthur executed a second restatement of the trust that designated an attorney named Edgardo Lopez (whom Rollins had recommended to Arthur and who drafted the second restatement)[2] as the successor trustee upon Arthur's death and that gave Lopez 9 percent of the trust's gross assets as trustee compensation. The restatement directed the trustee to distribute 51 percent of the trust assets to Rollins and 40 percent to Newell.[3] Arthur amended the second restatement in April 2021 to increase Lopez's compensation to 15 percent of the trust's assets, to name Rollins as the sole successor trustee (to serve without compensation) if Lopez could not serve, and to distribute

---

[2] Arthur's long-time friend and attorney Kenneth Roberts had previously represented Arthur and prepared his estate planning documents.

[3] The restatement also directed the trustee to distribute to Rollins a 2 percent membership interest Arthur at one time had in a limited liability company. The parties do not argue Arthur's interest in that company was in the trust or Arthur's estate at the time of his death.

100 percent of the remaining trust assets to Rollins, leaving Newell with nothing.

Arthur stopped communicating with Newell in May 2021. He died in November 2022. Because Lopez had died in October 2022, Rollins became the successor trustee upon Arthur's death. Newell learned of the January 2021 second restatement and the April 2021 amendment in December 2022, when an attorney for Rollins sent Newell a notice under Probate Code section 16061.7.

Newell filed a petition in probate court to determine the validity of the January 2021 second restatement and the April 2021 amendment, naming Rollins and Lopez (and later Lopez's estate) as respondents. Citing Probate Code section 21380, which provides that a donative transfer to a care custodian of a transferor who is a dependent adult is presumptively the product of fraud or undue influence, Newell alleged Rollins and Lopez obtained the January 2021 second restatement and the April 2021 amendment through fraud and undue influence. Newell also alleged Rollins and Lopez committed financial elder abuse, within the meaning of Welfare and Institutions Code section 15610.30, subdivision (a). Newell asked the court to suspend and ultimately remove Rollins as trustee of the trust, appoint Newell as trustee, order Rollins to account for all trust assets during the period she worked for Arthur, and require Rollins to post a $2 million bond. Newell also sought damages, attorneys' fees, and costs under Probate Code section 859.

After learning Rollins had used trust assets to purchase real property in Van Nuys, California, Newell filed a second supplement to the petition. Newell alleged Rollins held title to

4

the Van Nuys property as trustee of the trust and asked the court to impose a constructive trust on the property. Newell also recorded a notice of lis pendens.

Rollins filed a motion to expunge the lis pendens under section 405.31, which provides the "court shall order the notice [of lis pendens] expunged if the court finds that the pleading on which the notice is based does not contain a real property claim." Rollins argued Newell's petition did not contain a real property claim because Newell was challenging the validity of trust documents and claiming to have a beneficial interest in the trust, not claiming an interest in the Van Nuys property. In opposition to the motion to expunge Newell argued her petition, as supplemented, included a real property claim because the result of the petition "will clearly affect title to and the right to possession of the real property subjected to the lis pendens" and because she was asking the court to impose a constructive trust on the property. In reply Rollins argued Newell was not asserting a real property claim because the petition sought to change the trustee of the trust, not to recover real property from, or on behalf of, the trust. Rollins also argued Newell's request for a constructive trust was not valid because the Van Nuys property belonged to the trust and had not been transferred to a third party.

The probate court granted the motion to expunge the lis pendens. The court ruled that the petition did not state a claim that affected title to or possession of real property because Newell sought only to invalidate the January 2021 second restatement and the April 2021 amendment. The court stated that, because Rollins purchased the Van Nuys property after Newell filed her petition, none of the causes of action in the

5

petition implicated the property. The court also ruled Newell's request for a constructive trust on the Van Nuys property was not a real property claim, but was merely an effort to preserve trust assets during the pendency of the litigation. The court awarded Rollins $5,500 in attorneys' fees and costs.

Newell filed a petition for writ of mandate,[4] and we issued an alternative writ. The probate court subsequently held a hearing, decided not to vacate its order, and again ruled Newell's petition did not contain a real property claim. The court stated that, if Newell succeeded in invalidating the disputed trust documents, "the ownership of the real property in question would continue to be held by the trustee." The court also ruled Newell's request for a constructive trust did not state a real property claim because it was designed to preserve trust assets rather than obtain title to specific property.

## DISCUSSION

A. *Applicable Law and Standard of Review*

"'A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title to or right to possession of the real property described in the notice.'" (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647 (*Kirkeby*); see § 405.20; *Shoker v. Superior Court* (2022) 81 Cal.App.5th 271, 275 (*Shoker*).) "The purpose of a lis pendens is merely to furnish

---

[4]     "A petition for writ of mandate is the exclusive means of obtaining review of an order granting or denying a motion to expunge a lis pendens." (*Rey Sanchez Investments v. Superior Court* (2016) 244 Cal.App.4th 259, 262; see § 405.39; *De Martini v. Superior Court* (2024) 98 Cal.App.5th 1269, 1273.)

6

a means of notifying all persons of the pendency of an action and thereby to bind any person who may acquire an interest in property, subsequent to the institution of the action, by any judgment which may be secured in the action affecting the property." (*Deutsche Bank National Trust Co. v. McGurk* (2012) 206 Cal.App.4th 201, 213-214, italics omitted; see *De Martini v. Superior Court* (2024) 98 Cal.App.5th 1269, 1274 (*De Martini*) [a lis pendens "notifies 'prospective purchasers, encumbrancers and transferees that there is litigation pending that affects the property'"].)  "'In effect, a notice of lis pendens "republishes"' the pleadings.  [Citation.]  Thus a potential buyer of the property should be able [to] go the courthouse and look up the documents (the pleadings) in the court proceeding which might affect title or possession of the real property he or she is thinking of buying or lending money on.'" (*Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1254, italics omitted; see *Behniwal v. Mix* (2007) 147 Cal.App.4th 621, 638 ["'The whole idea of a notice of lis pendens is to give constructive notice of the legal proceeding affecting title to a specific piece of property.'"].)  "A lis pendens may be filed by any party in an action who asserts a 'real property claim.'" (*Kirkeby*, at p. 647.)

Section 405.30 allows a property owner to remove an improperly recorded lis pendens by filing a motion to expunge. A "lis pendens may be expunged if the action does not contain a real property claim or the claimant fails to establish the probable validity of the real property claim." (*De Martini*, *supra*, 98 Cal.App.5th at p. 1275.)  In particular, section 405.31 provides the court must expunge a lis pendens if the court finds the pleading on which the lis pendens is based does not contain a real property claim.  (*Kirkeby*, *supra*, 33 Cal.4th at p. 647; *Shoker*,

7

*supra*, 81 Cal.App.5th at p. 275.) In determining whether a pleading contains a real property claim, the court engages in "a demurrer-like analysis." (*Kirkeby*, at pp. 647-648.) "'Rather than analyzing whether the pleading states any claim at all, as on a general demurrer, the court must undertake the more limited analysis of whether the pleading states a real property claim.' [Citation.] Review 'involves only a review of the adequacy of the pleading and normally should not involve evidence from either side, other than possibly that which may be judicially noticed as on a demurrer.' [Citation.] Therefore, review of an expungement order under section 405.31 is limited to whether a real property claim has been properly pled by the claimant." (*Id.* at p. 648.) The party opposing a motion to expunge has the burden of showing the existence of a real property claim. (§ 405.30.)

The party opposing a motion to expunge a lis pendens also has the burden of showing "by a preponderance of the evidence the probable validity of the real property claim." (§ 405.32; see *Nunn v. JPMorgan Chase Bank, N.A.* (2021) 64 Cal.App.5th 346, 363.) "Probable validity 'means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim.'" (*De Martini*, *supra*, 98 Cal.App.5th at p. 1279.)[5]

---

[5] Rollins did not argue in the probate court, and does not argue on appeal, Newell could not establish by a preponderance of the evidence the probable validity of her claim.

8

B.    *Newell's Petition Contains a Real Property Claim*

A "real property claim" is a cause of action that "would, if meritorious, affect . . . title to, or the right to possession of, specific real property . . . ." (§ 405.4.)  Newell's petition, as supplemented, contains such a claim.

Newell alleged Rollins caused Arthur to execute a document naming Rollins as the sole beneficiary of the trust. That trust provision is presumed the product of fraud or undue influence because Rollins was Arthur's caregiver when he executed it.  (See Prob. Code, § 21380, subd. (a); *Robinson v. Gutierrez* (2023) 98 Cal.App.5th 278, 281; *Jenkins v. Teegarden* (2014) 230 Cal.App.4th 1128, 1136.)[6]  To rebut the presumption, Rollins will have to demonstrate by clear and convincing evidence the disputed trust provision was not the product of fraud or undue influence.  (See Prob. Code, § 21380, subd. (b); *Butler v. LeBouef* (2016) 248 Cal.App.4th 198, 208.)  And if Rollins fails to rebut the presumption, the court may remove her as trustee. (See Prob. Code, § 15642, subd. (b)(6) [grounds for removal of a trustee include where the trustee is a care custodian and receives a donative transfer from a dependent adult, within the meaning of Probate Code section 21380, subdivision (a)]; 13 Witkin, Summary of Cal. Law (11th ed. 2024) Trusts, § 61 ["The fact that

---

[6]    Probate Code section 21380, subdivision (a)(3), provides that a "provision of an instrument making a donative transfer to any of the following persons is presumed to be the product of fraud or undue influence," and one of those persons is a "care custodian of a transferor who is a dependent adult, but only if the instrument was executed during the period in which the care custodian provided services to the transferor, or within 90 days before or after that period."

a sole trustee is a disqualified person under [Probate Code section] 21380 is a ground for removal, whether or not the trustee is the transferee of a donative transfer from the transferor, unless the court, based on 'any evidence of the intent of the settlor and all other facts and circumstances,' finds that it is consistent with the settlor's intent that the trustee continue to serve and that that intent was not the product of fraud or undue influence."].) Until the probate court resolves that issue, however, Rollins remains the trustee (or at least she was when the court granted the motion to expunge). Newell also alleged Rollins acted in her capacity as trustee of the trust when she used trust assets to purchase the Van Nuys property. And the grant deed states "Neneth D. Rollins, Successor Trustee of the Mancini Family Trust dated April 16, 2002, as amended and restated," holds title to the Van Nuys property.

The probate court ruled Newell's petition did not state a real property claim because, "[t]o the extent petitioner Lucy Newell were to succeed on this claim, the named trustee and beneficiaries of the Mancini Family Trust may change, but the ownership of the real property in question would continue to be held by the trustee of the Mancini Family Trust." The issue, however, is whether Newell's petition would, if meritorious, affect *title* to the Van Nuys property. (§ 405.4.)

And it would. The trustee of a trust holds title to real property. "'Unlike a corporation, a trust is not a legal entity.' [Citation.] Rather, a trust is "'a fiduciary *relationship* with respect to property."' [Citation.] When property is held in trust, "'there is always a divided ownership of property,"' generally with the trustee holding legal title and the beneficiary holding equitable title." (*Boshernitsan v. Bach* (2021) 61 Cal.App.5th

10

883, 891; see *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1132, fn. 3; *Gonsalves v. Hodgson* (1951) 38 Cal.2d 91, 98.) Trusts do not own property; trustees do. (See *Portico Management Group, LLC v. Harrison* (2011) 202 Cal.App.4th 464, 473 ["a trust is not an entity; it cannot . . . hold title to property"]; *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 521 ["""a trust is not a legal person which can own property or enter into contracts"""; instead, it """is the trustee or trustees who hold title to the assets that make up the trust estate"""]; *Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1343 [the trustee, not the trust, is "the owner of the trust's property"].)

As stated, if Rollins fails to establish by clear and convincing evidence Arthur's donative transfer to her was not the product of fraud or undue influence, the court may remove Rollins as trustee. The court would have to designate a new trustee of the trust, who would then be entitled to hold title to the Van Nuys property in his or her name as successor trustee. In that event, Newell's petition would change the name of the titleholder. True, as the probate court stated, title would still be in the name of the trustee, but the trustee would be a different person, and the name of the title owner on the deed would be different. That's a pretty big effect on the title to the Van Nuys property. The probate court erred in ruling Newell's petition did not contain a real property claim within the meaning of section 405.4.

In denying Newell's motion to expunge the lis pendens, the probate court also suggested that a contrary interpretation of section 405.4 would lead to abuse of the lis pendens statutes. The probate court, in response to this court's alternative writ, stated that, "[i]f a change in trustee or beneficiary were sufficient to

state a real property claim and support a lis pendens, countless lis pendens could be recorded in connection with trust petitions pending before the probate courts." Yet, as the Supreme Court stated in *Kirkeby*, "we cannot ignore the plain language of the statute . . . ." (*Kirkeby*, *supra*, 33 Cal.4th at p. 651.) The probate court cited *BGJ Associates v. Superior Court* (1999) 75 Cal.App.4th 952, decided five years before *Kirkeby*, where the court stated an "'[o]verbroad definition of "an action . . . affecting the title or the right of possession to real property" would invite abuse of lis pendens.'" (*Id.* at p. 970.) Subsequent cases, however, have largely rejected that concern. (See *Shoker*, *supra*, 81 Cal.App.5th at p. 280 ["the *BGJ Associates* court's approach has since been discredited"]; see also *Kirkeby*, at p. 650 & fn. 6.)

Moreover, the statutory scheme gives a property owner a variety of protections from lis pendens abuse. (See *Kirkeby*, *supra*, 33 Cal.4th at p. 651 ["there are many other grounds for expunging a lis pendens"]; *Shoker*, *supra*, 81 Cal.App.5th at p. 280 ["Even before *BGJ Associates* was decided, the Legislature revised the statutory scheme, in 1992, to curb potential abuse."].) For example, as stated, section 405.32 requires the court to expunge a lis pendens "if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." (See *De Martini*, *supra*, 98 Cal.App.5th at p. 1279 ["to curb abuses of the lis pendens statute," the Legislature in 1992 revised the law governing lis pendens to require "the recording party to show by a preponderance of evidence that the action is probably valid"].) Section 405.33 requires the court to expunge a lis pendens even "if the court finds that the real property claim has probable validity, but adequate relief can be secured to the claimant by the

12

giving of an undertaking." And to provide a financial incentive against abuse, section 405.38 requires the court to award the prevailing party on a motion to expunge a lis pendens its reasonable attorneys' fees and costs, unless the losing party "acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust." (See *Kirkeby*, at p. 651; *Shoker*, at p. 280.) As the Supreme Court emphasized, the "availability of these statutory alternatives and the possible imposition of attorney fees and sanctions should discourage abuse of the lis pendens statute," and it is up to the Legislature—not the courts—to address any potential lis pendens abuse. (*Kirkeby*, at p. 651.)[7]

---

[7] Counsel for Rollins suggested at oral argument that a broad interpretation of "affect" in section 405.4 would "open the door" to "a massive amount of litigation." Our opinion addresses only the situation where, as here, a petitioner seeks to remove the trustee of a trust that includes real property, and the petition, if successful, would affect title to the property. In addition, because Newell's petition stated a real property claim within the meaning of section 405.4, we do not address the probate court's ruling Newell's request for a constructive trust did not state a real property claim.

13

## DISPOSITION

Let a peremptory writ of mandate issue directing the probate court to vacate its orders granting Rollins's motion to expunge the lis pendens and awarding Rollins attorneys' fees and costs and to enter a new order denying the motion. Newell is to recover her costs in this proceeding.

SEGAL, Acting P. J.

We concur:

FEUER, J.                           PULOS, J.*

---

*       Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14